Slip Op. 24-121

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| INSPIRED VENTURES, LLC, | |
| Plaintiff, | |
| v. | Before: Lisa W. Wang, Judge |
| UNITED STATES, | Court No. 24-00062 |
| Defendant. | |

## OPINION AND ORDER

[Denying Defendant's motion to dismiss for lack of subject matter jurisdiction.]

Dated: October 30, 2024

Elon A. Pollack, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, argued for plaintiff Inspired Ventures LLC.

Alexander J. Vanderweide, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY, argued for the defendant. With him on the brief was Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge, International Trade Field Office, and Nico Gurian, Trial Attorney. Of counsel on the brief was Zachary S. Simmons, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Wang, Judge: This action is a challenge to the alleged exclusion by U.S. Customs and Border Protection ("Customs" or "CBP") of two entries, Entry Nos. AVV-0053438-1 ("Entry 1") and AVV-0053445-6 ("Entry 2"), of certain rubber tires from the People's Republic of China ("China") that Plaintiff, Inspired Ventures, LLC ("Inspired"), attempted to import on November 28, 2023. Inspired commenced action before the court on March 12, 2024. The government filed a motion to dismiss for lack of subject matter jurisdiction on May 13, 2024, arguing that the court does not have jurisdiction

under 19 U.S.C. § 1581(a) because no protestable decision has been made by

Customs. For the foregoing reasons, the government's motion to dismiss for lack of

subject matter jurisdiction is denied.

### BACKGROUND

Plaintiff, Inspired, is a Wyoming limited liability corporation, and purchaser and

importer of the subject merchandise at issue. Compl. ¶ 7, ECF No. 5. On November 28,

2023, Inspired filed entry paperwork for certain rubber tires imports from China, which

were assigned entry numbers AVV-0053438-1 and AVV-0053445-6. Id. ¶¶ 11–12.

On November 30, 2023, Customs placed both of Inspired's entries on hold after

Customs deemed the entries a high potential risk for tariff evasion because of Inspired's

status as a new importer, the merchandise being subject to antidumping and

countervailing duties, and duties assessed pursuant to section 301 of the Trade Act of

1974. Def.'s Mot. to Dismiss and Accompanying Mem. in Supp. of Def.'s Mot. to

Dismiss ("Def.'s Mot.") at 4, ECF No. 10.

Customs rejected Inspired's initial entry papers of November 28, 2023, and

requested additional documentation regarding the subject merchandise and entry

summary information. Def.'s Mot. at 4 n.3. Inspired submitted its revised entry

documentation on January 8, 2024, which was accepted by Customs on the same day.

Compl. ¶ 12.

Inspired presented its entries for physical examination by Customs on December

7, 2023, which is a requirement for entries placed on hold by Customs. Def.'s Mot. at 4;

see also Decl. of Customs Import Specialist Nancy Cain ("Cain Decl.") ¶ 4, ECF No. 10-

1. The following day, on December 8, 2023, Inspired's entries were examined by Customs officers, who determined that the merchandise may be in violation of regulations promulgated by the U.S. Department of Transportation ("DOT") concerning rubber tires. Cain Decl. ¶ 5.

Customs subsequently issued a detention notice for Entry 1 on December 13, 2023, and a detention notice for Entry 2 on December 14, 2023. Id. ¶ 7; see also id. at Attach. A. Both detention notices listed "POSSIBLE DOT ISSUE" as the reason for detention. Id. at Attach. A. Customs initiated correspondence with the DOT's National Highway Transit Safety Administration ("NHTSA") inquiring "whether the importation of the [subject] tires is in violation of the statutes and regulations [that] National Highway Transit Safety Administration administers." Id. at Attach. B.

On December 21, 2023, NHTSA responded to Customs' inquiry finding that the subject tires were not compliant with the following NHTSA requirements: (1) certain marking and label requirements; (2) certain tire identification number ("TIN") content requirements; and (3) certain equipment and manufacturer reporting requirements. Id. NHTSA concluded that:

> NHTSA understands that the shipment of tires may be seized by CBP who has reasonable cause to believe that any law or regulation enforced by CBP has been violated. NHTSA is of the opinion that CBP may seize or deny entry of the shipment of tires, and NHTSA would not be opposed to such an action.

Id.

On February 22, 2024, Customs seized Entry 1, and issued a custody receipt on February 27, 2024. Id. at Attach. C. On March 25, 2024, Customs approved seizure of

Entry 2, but the shipment was not immediately seized by Customs and remained in detained status until August 2, 2024. Id. ¶ 11; Def.'s Status Report ("Def.'s Status Rep."), ECF No. 14. On August 12, 2024, Customs issued notices of seizure for Entry 1 and Entry 2. Def.'s Status Rep.

## JURISDICTION

The court has held that, "[it], like all federal courts, is one of limited jurisdiction and is presumed to be without jurisdiction unless the contrary appears affirmatively from the record." One World Techs., Inc. v. United States, 357 F. Supp. 3d 1278, 1286 (CIT 2018). The court's limited jurisdiction is one that is "conferred solely by statute; an administrative agency cannot enlarge or limit the court's jurisdiction." Wirtgen Am., Inc. v. United States, 447 F. Supp. 3d 1359, 1367 (CIT 2020) (citing Myers v. United States, 272 U.S. 52, 64 (1926)).

In examining the applicable statute, 28 U.S.C. § 1581(a) states that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). 19 U.S.C. § 1499 explains that "once an action respecting a detention is commenced, unless the Customs Service establishes by a preponderance of the evidence that an admissibility decision has not been reached for good cause, the court shall grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise." 19 U.S.C. § 1499(c)(5)(C). However, 19 U.S.C. § 1499(c) limits the court's jurisdiction to admissibility

determinations made by Customs, rather than admissibility determinations that are

"vested in an agency other than the Customs Service." 19 U.S.C. § 1499(c).

All other matters related to seizures that are not within the jurisdiction of the

Court of International Trade ("CIT") are subject to the district courts' original jurisdiction.

28 U.S.C. § 1356. In assessing the proper exercise of jurisdiction, "[t]he focus must be

solely on whether the claim falls within the language and intent of the jurisdictional grant

to the CIT." Vivitar Corp. v. United States, 761 F.2d 1552, 1559–60 (Fed. Cir. 1985)

(emphasis in original).

## STANDARD OF REVIEW

Under CIT Rule 12(b) "[m]otions to dismiss … allow litigants to dismiss any or all

claims for relief in any pleading for lack of subject matter jurisdiction." Second Nature

Designs Ltd. v. United States, 654 F. Supp. 3d 1301, 1304 (CIT 2023). A summons

serves as the "initial pleading in actions to contest the denial of a protest" and "must

establish the court's jurisdiction." DaimlerChrysler Corp. v. United States, 442 F.3d

1313, 1318 (Fed. Cir. 2006). Moreover, whether the court has subject matter jurisdiction

to hear an action is a "threshold" inquiry. Steel Co. v. Citizens for a Better Env't, 523

U.S. 83, 94–95 (1998).

When a Rule 12(b)(1) motion "simply challenges the court's subject matter

jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant

presents a 'facial' attack on the pleading—then those allegations are taken as true and

construed in a light most favorable to the complainant." Cedars-Sinai Medical Ctr. v.

Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). However, "allegations in the complaint

are not controlling" if a motion disputes factual allegations that serve as the basis for the complaint. Id. Thus, to "[establish] the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings …." Id. at 1584; see also 3M Co. v. Avery Dennison Corp., 673 F.3d 1372, 1378 (Fed. Cir. 2012) ("The district court must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.") (internal quotations omitted).

Prevailing on a motion to dismiss based on a jurisdictional dispute presents a high bar: "[i]f the party makes an allegation of fact that sufficiently invokes the subject matter jurisdiction of the Court of International Trade, then the party has satisfied the liberal pleading requirements of CIT Rule 8(a)(1), and a motion to dismiss is improper." Goodluck India Limited v. United States, 605 F. Supp. 3d 1343, 1346 n.2 (CIT 2022) (citing CIT Rule 8(a)(1)).

## DISCUSSION

### I.    The Government's Motion to Dismiss Is Denied Because Customs Has Vested Authority to Make the Relevant Admissibility Determination

The first issue before the court is whether Customs has the vested authority to make an admissibility determination upon the detention of subject tires, which would fall under the jurisdiction of this court, or whether the DOT's NHTSA has the vested authority to make an admissibility determination, which would render the court without jurisdiction. The court must therefore determine whether Congress vested jurisdiction to make an admissibility determination with NHTSA, rather than the jurisdiction of Customs designated in 28 U.S.C. § 1581(a).

In statutory interpretation, "[t]he first and foremost 'tool' to be used is the statute's text, giving it its plain meaning." Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998). 19 U.S.C. § 1499(c)(5)(A) provides that:

> The failure by the Customs Service to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination, or such longer period if specifically authorized by law, shall be treated as a decision of the Customs Service to exclude the merchandise for purposes of section 1514(a)(4) of this title.

19 U.S.C. § 1499(c)(5)(A).

Such a requirement is applicable "[e]xcept in the case of merchandise with respect to which the determination of admissibility is vested in an agency other than the Customs Service." Id. § 1499(c) (emphasis added). The plain meaning provides that there exist agencies other than Customs with vested authority to make the determination. The statute itself, however, does not provide which agencies "other than the Customs Service" have vested authority. See id.

Because the statute is silent as to the identity of these "other" agencies, the court must look to tools of statutory interpretation beyond the statute's plain language. Salant Corp. v. United States, 86 F. Supp. 2d 1301, 1305–06 (CIT 2000) ("Beyond the statute's text, those 'tools' include the statute's structure, canons of statutory construction, and legislative history.").

Here, the legislative history of 19 U.S.C. § 1499(c) provides a description of the delineation of responsibilities between Customs and other federal agencies in admissibility determinations:

>In meeting the "good cause" burden related to an admissibility decision before the Court of International Trade, the Committee intends that the Customs Service may satisfy the "good cause" burden by showing that <u>another federal agency with jurisdiction over an admissibility decision</u> has not yet reached a determination regarding the admissibility of the merchandise. The Committee intends, however, that this not provide the basis for continued inordinate delay and would encourage the determination by the court of a reasonable date certain for a decision.
>
>The Committee recognizes that Customs often detains merchandise <u>on behalf of other Government agencies</u> and is not directly involved in the activities which result in the decision to admit or exclude the merchandise. These agencies include the Food and Drug Administration (FDA) and the Department of Agriculture, <u>among others</u>. This procedure providing recourse through the Court of International Trade would be reserved for admissibility determinations for which the Customs Service is responsible. <u>Nothing in this section is intended to change the procedures or relationship between Customs and other Federal agencies</u>. However, this would not preclude application of this new procedure and remedy in those cases where Customs has the responsibility and authority to determine the admissibility of the merchandise, and such procedures and remedies are <u>agreed to by the other agency</u>.

H.R. Rep. No. 103-361, pt. 1, at 111–12 (1993) (emphases added).

The legislative history is instructive. Congress explained that there are instances where "another agency [has] jurisdiction over an admissibility decision." <u>Id</u>. The court only has jurisdiction for "admissibility determinations for which the Customs Service is responsible." <u>Id</u>. Congress provides two examples of "other Government agencies" vested with admissibility authority (i.e., the FDA and the U.S. Department of Agriculture ("USDA")), and states that these agencies may be situated "among others." <u>Id</u>.

Congress' use of the term "among others" is meant to limit the scope of federal agencies to those with specific jurisdiction over admissibility determinations rather than all federal agencies. <u>Id</u>. (specifying that such decisions must be made by "another federal agency with jurisdiction over an admissibility decision"). Congress further

explained that should an instance occur where Customs has the "responsibility and authority" to make an admissibility determination, another agency agreeing with a Customs determination does not transfer such authority to another agency for purposes of 19 U.S.C. § 1499(c). Id.

In sum, Customs has the vested authority to make admissibility determinations unless specific jurisdiction has been vested by Congress in another agency.

## A.    DOT's NHTSA Does Not Have Vested Authority for the Relevant Admissibility Determinations

The court now must determine whether the DOT's NHTSA had vested authority to make the admissibility determination of the tires at issue. The National Traffic and Motor Vehicle Safety Act ("NTMVSA"), 49 U.S.C. § 30101 et seq., was enacted by Congress "to reduce traffic accidents and deaths and injuries resulting from traffic accidents" by "prescrib[ing] motor vehicle standards for motor vehicles and motor vehicle equipment in interstate commerce" and "carry[ing] out needed safety research and development." 49 U.S.C. § 30101.

49 U.S.C. § 30112(a)(1) of the NTMVSA provides that "a person may not manufacture for sale, sell, offer for sale, introduce or deliver for introduction in interstate commerce, or import into the United States, any motor vehicle or motor vehicle equipment … unless the vehicle or equipment complies with the standard." 49 U.S.C. § 30112(a)(1) (emphases added).

The government argues that because of the existence of 49 U.S.C. § 30112(a)(1), "the admissibility determination for the merchandise at issue is vested with NHTSA, and not with CBP. Therefore, the subject tires have not been deemed excluded

and the [c]ourt does not have subject matter jurisdiction over this case." Def.'s Mot. at 9. Inspired, however, argues that the "DOT does not have independent authority to make admissibility determinations. Unlike the [USDA] or [FDA], which have specific authority ... the DOT simply reviews the information provided by [Customs] and advises [Customs] as to the result of its findings for [Customs'] use in making [Customs'] decision." Pl.'s Mem. in Supp. of Its Opp. to Government's Mot. to Dismiss. ("Pl.'s Opp.") at 11, ECF No. 12.

Inspired is correct that 49 U.S.C. § 30112(a)(1) does not provide an explicit delegation of authority for NHTSA to make admissibility determinations for imports of motor vehicles or motor vehicle equipment, including the tires at issue. The mere promulgation of product standards and regulations does not vest that agency with the authority to deny imports that fail to meet those standards. The statute provides for regulations that manufacturers must follow, including tire identification and recordkeeping requirements. See 49 C.F.R. § 574. Neither the statute, 49 U.S.C. § 30112(a)(1), nor the relevant TIN regulation, 49 C.F.R. § 574, provide for admissibility authority in NHTSA. Rather, the statute and regulations provide authority for NHTSA to conduct relevant "safety research and development," as well as "prescribe motor vehicle safety standards." 49 U.S.C. § 30101. No authority to make import determinations is vested in NHTSA under the federal statute or regulations.[1]

---

[1] The court notes that a proposed amendment to 49 U.S.C. § 30112(a)(1), introduced in July 2023, would have provided admissibility authority to DOT for imported vehicles and vehicle equipment from Chinese manufacturers, which would include the tires at issue.

In contrast to the statutory language of the NTMVSA, the agencies discussed by Congress in the legislative history of 19 U.S.C. § 1499(c) had express congressional authority to make entry determinations, and Customs' role has been limited.[2] In such cases, Customs has performed a ministerial role under the "instructions" of another agency.[3] The court has held that "the 'ministerial standard,' in its ordinary meaning, excludes actions requiring genuine interpretive or comparable judgments as to what is to be done." Thyssenkrupp Steel N. Am., Inc. v. United States, 886 F.3d 1215, 1224–25

---

H.R. 4761, 118th Cong. (2023). The proposed amendment expressly delegates authority to the DOT, with "coordination" support from the U.S. Department of Commerce. Id. Specifically, the legislation provides that the "Secretary [of Transportation], in coordination with the Secretary of Commerce, shall determine whether any motor vehicle or motor vehicle equipment poses a risk to United States security." Id. § 2. If such a finding is made, the subject merchandise "may not [be] ... import[ed] into the United States …." Id. In providing admissibility authority to the DOT in the proposed amendment, Congress acknowledged that the DOT does not currently have admissibility authority. The proposed amendment has not been passed since its introduction.

[2] For example, pursuant to the Plant Protection Act, Congress vested determination authority on importation of plant pesticides with the Department of Agriculture rather than Customs. Specifically, the statute provides that "it is the responsibility of the Secretary [of Agriculture] to facilitate exports, imports, and interstate commerce in agricultural products and other commodities that pose a risk of harboring plant pests or noxious weeds in ways that will reduce, to the extent practicable, as determined by the Secretary, the risk of dissemination of plant pests or noxious weeds." 7 U.S.C. § 7701(3). (emphasis added).

[3] For example, where Congress provided authority to the Department of Commerce ("Commerce") for the determination of antidumping duties, it specified that Customs would be following the instructions of Commerce: "[i]n a case in which a final determination [by Commerce] under paragraph (1) is under review ... the administering authority shall ... transmit to the Federal Register for publication the final disposition and issue instructions to the Customs Service with respect to the liquidation of entries pursuant to the review." 19 U.S.C. § 1675(a)(3) (emphases added).

(Fed. Cir. 2018); see also, e.g., Koyo Corp. of U.S.A. v. United States, 497 F.3d 1231, 1242–43 (Fed. Cir. 2007) (ruling that when Customs fails to execute liquidation instructions from another agency, and instead, by delay, leaves the entry to deemed liquidation by operation of law, it is no longer performing a ministerial role). It would stand to reason that when Customs performs actions requiring interpretative or comparability judgments, it would not be performing a ministerial role.

The government cites to Andritz Sundwig GMBH v. United States, 322 F. Supp. 3d 1360 (CIT 2018), in support of its argument. Def.'s Mot. at 11. The government argues that the court in Andritz held that it did not have jurisdiction due to the exclusion of merchandise being based on an agricultural law, rather than a "provision of the customs laws." Id. The government's reliance on this case is misplaced. In Andritz, the court held that the authority to exclude merchandise from entry typically lies with Customs, but the exclusion at issue was taken pursuant to the USDA's Plant Protection Act. Specifically, the court found that the plaintiff's:

> underlying cause of action does not stem from its protest, but rather [emergency action notifications] EANs. The EANs themselves list USDA as the supervisory agency and cite the Plant Protection Act and regulations promulgated thereunder.

Id. at 1364.

There, the exclusion was issued pursuant to the EANs themselves, which listed the USDA as the agency responsible for making the plant pest, and as a result, entry determination. Id. Further, the Plant Protection Act specifies that the risk of harboring plant pests shall be "determined" by the Secretary of Agriculture. See 7 U.S.C. § 7701(3) ("Congress finds that … it is the responsibility of the Secretary to facilitate

exports, imports, and interstate commerce in agricultural products ... that pose a risk of

harboring plant pests ... as determined by the Secretary.").

  Here, unlike in Andritz, no separate determination authority has been delegated

to NHTSA. See 49 U.S.C. § 30112. A more apt comparison would be to CBB Group,

Inc. v. United States, 783 F. Supp. 2d 1248 (CIT 2011). In CBB Group, the court

determined that it retained jurisdiction when Customs made an admissibility

determination based on copyright law. Id. at 1256. While issues of copyright

infringement are governed by section 602 of the Copyright Act of 1976, 17 U.S.C. §

602(a)(1), the court held that "the determination of admissibility [by Customs] and the

determination of whether the merchandise is piratical [by Customs] are the same

determination." Id. at 1255. Similar to the court's rationale in CBB Group, Customs'

determination of admissibility and adherence to NHTSA's safety regulations are one

and the same.

  Contrary to the government's arguments, the recommendations and opinions of

another agency do not divest Customs of its general admissibility authority. Where an

agency has vested authority to make a determination, it is not suddenly without that

authority by requesting advice from another agency. Here, Customs Import Specialist

("IS") Director Nancy Cain explained that, "I regularly review automotive goods imported

into the United States for compliance issues .... " Cain Decl. ¶ 8 (emphases added). In

other words, it is Customs, not the NHTSA, which regularly conducts its own

examination of tires and other vehicle equipment pursuant to the standards provided by

NHTSA in 49 U.S.C. § 30112(a)(1). Customs may seek guidance and recommendations

from another federal agency, like NHTSA, but it is Customs who makes the ultimate

compliance determination.

NHTSA explained to IS Director Cain that the tires at issue were missing a

complete tire identification number, writing that:

> NHTSA understands that the shipment of tires may be seized by CBP who
> has reasonable cause to believe that any law or regulation enforced by CBP
> has been violated. NHTSA is of the opinion that CBP may seize or deny
> entry of the shipment of tires, and NHTSA would not be opposed to such an
> action.

Id. at Attach. B (emphases added).

This language makes clear that NHTSA is providing an opinion to Customs.

Here, Customs was not given instructions by NHTSA to detain the merchandise.

Instead, NHTSA itself asserted that both the determination ("reasonable cause") and the

enforcement ("law or regulation enforced") are within Customs' authority. See id.

Customs engaged in its own "comparable judgment as to what was to be done" with the

tires after consulting NHTSA. See Thyssenkrupp Steel, 886 F.3d at 1224–25.

At this posture, the court does not take a stance as to whether Custom's decision

to hold the tires pursuant to DOT's NHTSA regulations was correct. However, the court

will not "usurp [its] judicial power and prevent [itself] from fulfilling its judicial

responsibility." CBB Group, 783 F. Supp. 2d at 1254–55. The government's motion to

dismiss because the exclusions of Entry 1 and Entry 2 were based on NHTSA's

admissibility authority is denied.

## II.    The Court Has Subject Matter Jurisdiction Over Entry No. AVV-005343-1

The second issue before the court is whether the government's motion to dismiss as to Entry 1 should be granted because the court lacks jurisdiction to review the seizure of goods.

The government contends that it seized Entry 1, rendering the court without jurisdiction because "CBP's seizure of goods is reviewable by the federal district court in the district in which the merchandise is located." Def.'s Mot. at 16 (citing 28 U.S.C. § 1356).[4] The government further contends that "the date of actual seizure is the legally effective date of seizure." Id. at 17.

Inspired argues that "the goods were deemed excluded by operation of law prior [to] seizure, if one has even been effectuated." Pl.'s Opp. at 7. That is, Customs "did not seize the merchandise until February 22nd, more than sixty days after the date of (1) the December 8th examination of the goods, (2) the December 13th detention notice and (3) the December 21st email from NHTSA to Customs." Id. at 6 (emphasis in original). Inspired further argues that the "purported seizure also occurred after Plaintiff filed its protest challenging the deemed exclusion." Id.

28 U.S.C. § 1581(a) states that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in

---

[4] Respecting the issue of seizure, the government's motion contends only that the court lacks jurisdiction over Entry 1. The government does not contend that the court lacks jurisdiction over Entry 2, which was seized after the commencement of this proceeding. See Def.'s Mot. at 17.

whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a).

Conversely, 28 U.S.C. § 1356 states that "[t]he district courts shall have original

jurisdiction ... over any seizure under any law of the United States." In assessing the

proper exercise of jurisdiction, "[t]he focus must be solely on whether the claim falls

within the language and intent of the jurisdictional grant to the CIT." Vivitar Corp., 761

F.2d at 1559.

There exists a "wrinkle in the seizure-exclusion jurisdictional divide." Root

Sciences, LLC v. United States, 543 F. Supp. 3d 1358, 1368 n.2 (CIT 2021). The U.S.

Court of Appeals for the Federal Circuit has explained that it looks to the "true nature of

the action" in determining whether an exercise of jurisdiction was proper. Hutchison

Quality Furniture, Inc. v. United States, 827 F.3d 1355, 1360 (Fed. Cir. 2016). Further,

"the true nature of a particular action will depend upon the attendant facts asserted in

the pleadings." Id.

The court has generally relied on four factors to determine whether an entry

should be treated as an exclusion or a seizure for jurisdictional purposes:

> In determining whether a plaintiff has challenged a seizure, as opposed to
> an exclusion, the court commonly considers a number of factors, including
> whether: (1) the plaintiff's protest indicated that it was challenging the
> "seizure" of the merchandise; (2) the plaintiff received a notice of seizure
> from Customs; (3) the government had control over the merchandise; and
> (4) upon notice, the plaintiff was required to choose between immediate
> forfeiture proceedings or a petition for relief from seizure.

H & H Wholesale Servs., Inc. v. United States, 437 F. Supp. 2d 1335, 1341 (CIT 2006)

(quoting CDCOM (U.S.A.) Int'l, Inc. v. United States, 963 F. Supp. 1214, 1217

(CIT 1997)); see also Int'l Maven, Inc. v. McCauley, 678 F. Supp. 300, 302 (CIT 1988)

(concluding that the CIT had no jurisdiction where: (1) the protest challenged the seizure on its face; (2) plaintiff received notice of seizure; (3) the government had control of the merchandise; and (4) plaintiff was able to petition for relief from seizure); R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1431, 1433, 1437 (CIT 1986) (explaining that the court would not "adopt a rule that would divest the [court] of jurisdiction simply because plaintiff filed its protest after Customs chose ... to formally seize the subject goods" and finding that the plaintiff "properly invoked the jurisdiction of this Court by contesting the denial of a protest"); Tempco Marketing v. United States, 957 F. Supp. 1276, 1279 (CIT 1997).

The factors considered in these cases provide a useful framework in distinguishing between an exclusion or a seizure. See, e.g., H & H Wholesale, 437 F. Supp. 2d at 1341. Although no one factor is determinative, each one guides the court's totality analysis of whether the court's jurisdiction has attached. See H & H Wholesale, 437 F. Supp. 2d at 1342; Int'l Maven, 678 F. Supp. at 302.

The first factor concerns whether a plaintiff's protest indicates that it is challenging a seizure as opposed to an exclusion. See H & H Wholesale, 437 F. Supp. 2d at 1341. Here, Inspired's protest indicated that it was challenging an exclusion rather a seizure. Customs and Border Protection Protest Entries ("Protest Entry"), ECF No. 11-1 at 12 ("[P]rotest is made against Customs' decision to exclude Inspired Ventures LLC's admissible rubber tires imported under entry no. AVV00534381 and AVV00534456.").

The second factor concerns whether a plaintiff has received notice of a seizure from Customs. See H & H Wholesale, 437 F. Supp. 2d at 1341. Here, Customs failed to provide notice to Inspired as to the seizure of the merchandise until after the commencement of this proceeding. See Def.'s Status Rep. Specifically, the record shows that the government did not provide formal notice of seizure for Entry 1 until August 12, 2024, more than eight months after Inspired filed entry paperwork for the subject merchandise. See Def.'s Status Rep. Prior to the filing of the government's status report, Inspired explained that it had not received notice of seizure and was thus unable to challenge a seizure. Pl.'s Opp. at 9. The government concedes that Inspired's arguments were "fairly" noted, and purported to solve the problem by "[notifying] the parties and the Court that CBP will issue the notice of seizure" for Entry 1. Def.'s Reply at 16.

The third factor concerns whether the government has control over the merchandise. See H & H Wholesale, 437 F. Supp. 2d at 1341. As the court has explained, "one clear difference between exclusion and seizure is who gains control of the merchandise by virtue of Customs' action." Id. at 1342. If "merchandise is excluded, the owner regains control," but "when merchandise is seized, Customs retains control of it and it may not be sent to another destination." Id. Inspired contends that communications between Customs and its broker instructing "him to refile the entries and deposit $30,000 in antidumping duties ... led plaintiff to believe that its merchandise is admissible and would be released for consumption." Pl.'s Opp. at 12. Customs,

however, has maintained control over the merchandise since Inspired attempted to import Entry 1 in November 2023. Cain Decl. ¶ 3.

The fourth factor considers whether a plaintiff, upon notice, was required to choose between immediate forfeiture proceedings or a petition from relief from seizure. See H & H Wholesale, 437 F. Supp. 2d at 1341. The government contends that Inspired is entitled to challenge the purported seizure, but not before this court. Def.'s Reply at 16. However, because Inspired was not notified of the seizure of Entry 1 until August 12, 2024, which was after the commencement of this proceeding, it was unable to choose between immediate forfeiture proceedings or a petition for relief from seizure. See Def.'s Status Rep. Customs cannot fail to provide a seizure notice for months and then argue that "IVL may pursue its available remedies to challenge the seizure" only after confronted with Inspired's briefs. Def.'s Reply at 16.

Considering the totality of the facts within the framework provided by H & H Wholesale and other cases on this issue, the court finds that an exclusion is being challenged. Inspired did not receive a notice of seizure prior to filing its complaint, and there is no evidence on the record indicating that Inspired understood its merchandise was seized prior to filing its complaint. As such, Inspired was unable to make a choice between forfeiture proceedings or a petition for relief from seizure (i.e., Inspired had no notice of seizure such that it could avail itself of these potential remedies). Considering these factors together, the court finds that Inspired has challenged an exclusion of its entries.

### A.    The Date of Notice of Seizure Is the Operative Date

The government next argues that the legally operative date of seizure is the date of "actual seizure" rather than the date of "notice."  The operative date would determine whether the court's jurisdiction has attached under § 1499(c).

19 U.S.C. § 1499(c) requires Customs to "decide whether to release or detain" merchandise within a "5-day period … following the date on which merchandise is presented for customs examination." Merchandise "not released within the prescribed period is considered to be detained." Id. § 1499(c)(1). Where Customs does not determine the admissibility of detained merchandise within thirty days after its presentation for examination, the inaction will be treated as a decision by Customs to exclude the merchandise. Id. § 1499(c)(5)(A).

In CBB Group, the court declined to dismiss an action based on seizure of an entry because the action "did not arise as a result of the issuance of the seizure notice, an event that took place after plaintiff's cause of action was initiated and after the court's jurisdiction over that cause of action had attached." 783 F. Supp. 2d at 1255. Similarly, in this action, Inspired's claim did not arise out of a seizure notice.[5] Instead, Customs

---

[5] The government cites several cases to support its view that the date of actual seizure is the legally effective date of seizure. Def.'s Mot. at 17 (citing Root Sciences, LLC v. United States, 543 F. Supp. 3d 1358, 1369 (CIT 2021); Tempco Marketing v. United States, 957 F. Supp. 1276, 1279 (CIT 1997); PRP Trading Corp. v. United States, 885 F. Supp. 2d 1312, 1313–14 (CIT 2012); CDCOM (U.S.A.) Int'l Inc. v. United States, 963 F. Supp. 1214, 1217 (CIT 1997)). The government's reliance is misplaced as these cases dealt with the actual seizure of goods within the thirty-day requirement of 19 U.S.C. § 1499(c). No case cited by the government involved either: (1) the seizure of goods outside this time period, (2) the issuance of a seizure notice months after an action had commenced with the court, or (3) notice of seizure following the

claims that it "has not noticed seizure ... because IVL commenced this action." Def.'s

Reply at 15. Such a justification, however, does not explain why the commencement of

a judicial proceeding prevented Customs from issuing a seizure notice. Further, the

issuance of a seizure notice does not "deprive [the CIT] of the ability to fulfill its judicial

responsibility as directed by statute." CBB Group, 783 F. Supp. 2d at 1255 (explaining

that "an internal agency decision to proceed with seizure, which did not ripen into notice

until twenty-one days later" did not preclude the court from providing a remedy).

      The government relies on Root Sciences for its proposition that "the date of

actual seizure controls." 543 F. Supp. 3d at 1369; see also Def.'s Reply at 15. However,

Root Sciences limited its inquiry to "whether a seizure effected within thirty days of

presentment of goods for examination constitutes an admissibility determination that

prevents a deemed exclusion from occurring by operation of law." Id. at 1364 (emphasis

added). It is within this context that the court reached its decision, which makes its

reasoning inapplicable here.

      Contrary to the government's assertion, the act of seizure on its own does not

automatically shift jurisdiction from this court to a district court. See Def.'s Mot. at 25

("Because Entry No. AVV-0053438-1 has been seized, the federal district court in which

---

commencement of court proceedings. For example, in Tempco, the date of actual
seizure fell within thirty days of the merchandise being presented for entry, but the
government's notice of seizure was provided after thirty days. 543 F. Supp. 3d at 1279.
The court in Tempco held that no deemed exclusion occurred because "seizure
occurred within thirty days of presentation for examination." Id.; see CDCOM, 963 F.
Supp. at 1217; PRP Trading, 885 F. Supp. 2d at 1313.

the entry is located is the proper venue to challenge the seizure, not this Court."); see also CBB Group, 783 F. Supp. 2d at 753 ("The issuance of the Seizure Notice, which took place after this case was brought and the court's jurisdiction over the claim attached, is no bar to the future ability of the court to order a remedy to which plaintiff ultimately may be entitled."). Moreover, the U.S. Court of Appeals for the Federal Circuit has explained that "it is faulty analysis to look first to the jurisdiction of the district courts to determine whether the CIT has jurisdiction. Given the broad jurisdictional grant to district courts, a district court would always have jurisdiction, rather than the CIT, using this approach." Vivitar Corp., 761 F.2d at 1559.

     The purpose of notice, as the government recognized in its brief, is to give the party whose merchandise is seized the opportunity for due process. See Def.'s Reply at 20 ("[S]o that [Inspired] may pursue its available remedies to challenge the seizure, we hereby notify the parties and the Court that CBP will issue the notice of seizure for [Entry 1].... "). Where there is no notice, there is no opportunity for Inspired to avail itself of the judicial process in the district courts.

     Finally, the government argues that Customs was not required to provide notice of seizure within any specific timeframe. Def.'s Reply at 13 ("[N]o such timeline is required here by statute or other applicable provision of law.") (citing 19 U.S.C. § 1499(c)(5)).[6] Specifically, the government contends that 19 U.S.C. § 1499(c) does not

---

[6] Inspired contends that Customs was required to provide notice pursuant to 19 C.F.R. § 162.92. Pl.'s Opp. at 8–9. The regulation cited by Inspired expressly exempts the Tariff Act of 1930, as amended, and is thus inapplicable here.

impose any timing requirements "[b]ecause CBP was not responsible for determining the admissibility of IVL's tires." Id. at 14. As discussed above, the provisions of § 1499(c)(5) are applicable here because Customs had the vested authority to make an admissibility determination. Customs cannot use as an argument its delay in providing notice of seizure to divest the court of its jurisdiction. In sum, the court's jurisdiction over Entry 1 has attached because the subject merchandise was deemed excluded prior to seizure.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**.

It is hereby:

**ORDERED** that the parties are directed to confer and file within forty-five (45) days of the date of this order a Joint Status Report and Proposed Scheduling Order; and it is further

**ORDERED** that Defendant will file a responsive pleading within 14 days pursuant to CIT Rule 12(a)(2)(A).

/s/      Lisa W. Wang
Lisa W. Wang, Judge

Dated: October 30, 2024
         New York, New York